## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIP A. POCHINSKY, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| STANDARD AVB FINANCIAL CORP., | ) |
| TERENCE L. GRAFT, GREGORY J. SAXON, | ) |
| DALE A. WALKER, ANDREW W. HASLEY, | ) |
| WILLIAM T. FERRI, PAUL A. IURLANO, | ) |
| JOHN M. LALLY, JENNIFER H. LUNDEN, | ) |
| DAVID C. MATHEWS, RONALD J. MOCK, | ) |
| THOMAS J. RENNIE, R. CRAIG | ) |
| THOMASMEYER, and TIMOTHY K. | ) |
| ZIMMERMAN, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Philip A. Pochinsky ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Standard AVB Financial Corp. ("STND" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with STND, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger between STND, Dollar Mutual Bancorp ("Dollar Mutual"), and Dollar Acquisition Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Dollar Mutual ("Proposed

Transaction"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On September 24, 2020, STND entered into an agreement and plan of merger with Dollar Mutual and Merger Sub ("Merger Agreement"), whereby STND will merge into Merger Sub with STND surviving the merger as a wholly-owned subsidiary of Dollar Mutual.

3.      Upon consummation of the Proposed Transaction, STND shareholders will be entitled to receive $33.00 in cash for each share of STND common stock they own ("Merger Consideration").

4.      On November 25, 2020, in order to convince STND public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for the Company; (ii) the valuation analyses performed by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"); and (iii) the *Background of the Merger.*

6.      The Proposed Transaction is expected to close in the first half of 2021, so the special meeting of the Company's shareholders to vote on the Proposed Transaction is imminent ("Shareholder Vote").  Therefore, it is imperative that the material information that has been omitted from the Proxy be disclosed prior to the Shareholder Vote, so STND's shareholders can properly exercise their corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to STND shareholders sufficiently in

advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, STND's common stock trades on the NasdaqGS, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of STND common stock.

12.     Defendant STND is a public company incorporated under the laws of Maryland with principal executive offices located at 2640 Monroeville, PA 15146.  STND's common stock is traded on the NasdaqGS under the ticker symbol "STND."

13.     Defendant Terence L. Graft is, and has been at all relevant times, a director of the Company and Chairman of the Board.

14.     Defendant Gregory J. Saxon is, and has been at all relevant times, a director of the Company and Vice Chairman of the Board.

15.     Defendant Andrew W. Hasley is, and has been at all relevant times, a director of the Company, President, and Chief Executive Officer.

16.     Defendant Dale A. Walker is, and has been at all relevant times, a director of the Company.

17.     Defendant William T. Ferri is, and has been at all relevant times, a director of the Company.

18.     Defendant Paul A. Iurlano is, and has been at all relevant times, a director of the Company.

19.     Defendant John M. Lally is, and has been at all relevant times, a director of the Company.

20.     Defendant Jennifer H. Lunden is, and has been at all relevant times, a director of the Company.

21.     Defendant David C. Mathews is, and has been at all relevant times, a director of the Company.

22.     Defendant Ronald J. Mock is, and has been at all relevant times, a director of the Company.

23.     Defendant Thomas J. Rennie is, and has been at all relevant times, a director of the

4

Company.

24.    Defendant R. Craig Thomasmeyer is, and has been at all relevant times, a director of the Company.

25.    Defendant Timothy K. Zimmerman is, and has been at all relevant times, a director of the Company.

26.    The defendants identified in paragraphs 13 through 25 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## <u>SUBSTANTIVE ALLEGATIONS</u>

**Background of the Company and the Proposed Transaction**

27.    STND operates as a bank holding company for Standard Bank PaSB that provides financial services to individuals, families, and businesses. The Company offers various deposit accounts, including savings accounts, certificates of deposit, money market accounts, commercial and regular checking accounts, and individual retirement accounts. It also provides commercial real estate loans, commercial business loans, one- to four-family residential mortgage loans, home equity loans, lines of credit, construction loans, and consumer loans and overdraft lines of credit, and investment securities. STND operates through a network of 17 banking offices located in the Allegheny, Westmoreland, and Bedford counties, Pennsylvania; and Allegany County, Maryland.

28.    According to the September 25, 2020, joint press release announcing the Proposed Transaction:

### Dollar Mutual Bancorp to Acquire Standard AVB Financial Corp.

PITTSBURGH, PA and MONROEVILLE, PA, September 25, 2020/GlobeNewswire/ - Dollar Mutual Bancorp ("Dollar") and Standard AVB Financial Corp. ("Standard") (NASDAQ: STND) jointly announced the signing of a definitive merger agreement pursuant to which Dollar will acquire Standard, the Monroeville, Pennsylvania based holding company and parent of Standard Bank, PaSB in an all cash transaction for an aggregate purchase price of $158 million.

Under the terms of the merger agreement, which has been approved unanimously by the boards of directors of both companies, stockholders of Standard will be entitled to receive $33.00 in cash for each share of Standard common stock they own.

"We are delighted to have Standard Bank join the Dollar family, we feel this is an excellent fit. We share the same core values, commitment to our customers and dedication to the communities we serve," said James J. McQuade, President and CEO of Dollar. "As we move forward together, I am excited for the opportunities to drive our strategic growth and maximize our long-term value, while strengthening Dollar's presence in the region."

After the transaction, Standard Bank will operate as a wholly owned subsidiary of Dollar, with Andrew W. Hasley continuing as President of Standard Bank. Mr. Hasley commented, "this agreement allows us to honor our longstanding commitments in the community, while continuing to serve our customers with the same high level of personal service. Dollar's commitment to their customers, communities and employees mirror our own. We both have a rich history in the Pittsburgh region and Standard could not be more excited to begin our new relationship as a part of the Dollar family."

After the transaction the board of directors of Standard will become an advisory board of Standard Bank. In connection with the execution of the merger agreement, Dollar has entered into voting agreements with the directors and certain executive officers of Standard. Subject to the terms and conditions of the voting agreements these parties have agreed to vote their shares in favor of the transaction.

The merger is expected to be consummated during the first half of 2021, after the satisfaction of customary closing conditions, including regulatory approvals and the approval of Standard's stockholders.

Mr. McQuade continued, "this is an exceptional fit for Dollar. The combined assets of both companies will enhance our proven ability to serve our community, while enriching the benefits to our customers and employees."

Raymond James is serving as financial advisor and Luse Gorman, PC is serving as legal counsel to Dollar in this transaction.

Keefe, Bruyette & Woods, *A Stifel Company*, is serving as financial advisor and Kilpatrick Townsend & Stockton LLP is serving as legal counsel to Standard.

(Emphasis in original).

29.     The Merger Consideration represents inadequate compensation for STND shareholders.  Proxy, 6-7, 24.

30.     Therefore, it is imperative that the Company's shareholders will receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for them to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**The Proxy Omits Material Information**

31.     On November 25, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Shareholder Vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction, and thus the Proxy should be amended.

32.     First, the Proxy fails to provide critical information regarding financial projections for the Company.

33.     In particular, the Proxy only discloses the Company's projections for the year ending on December 31, 2020, while failing to provide its shareholders with the Company's forward-looking projections. Proxy, 35-36.  The omission of these forward-looking projections renders the Proxy materially incomplete and misleading because shareholders will be unable to understand the true picture of STND's valuation – information that is integral to STND's shareholders when determining whether to vote in favor of the Proposed Transaction.

34.     Most importantly, the Proxy fails to disclose the Company's estimated excess cash flow projections as a standalone company from October 1, 2020 to December 31, 2025 ("Cash Flow Projections") that were blatantly referenced in KBW's *Discounted Cash Flow Analysis*. *Id.* at 33.  It is indisputable that the Cash Flow Projections were the most important input in KBW's *Discounted Cash Flow Analysis* for the Company because the analysis is based upon discounting the Cash Flow Projections to present value. *Id.* at 33-34.  However, Defendants elected to exclude the Cash Flow Projections from the Proxy, despite the fact that they simultaneously elected to include a purported "summary" of KBW's *Discounted Cash Flow Analysis*.  This omission renders the projections on

page 35-36 of the Proxy incomplete and misleading because without the Cash Flow Projections, the Company's shareholders will be misled as to the overall valuation picture of STND.

35.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the STND projections relied upon by KBW, but have omitted forward-looking projections, and more specifically have omitted the Cash Flow Projections.

36.     Second, the Proxy omits material information regarding KBW's financial analyses with respect to the Proposed Transaction.

37.     KBW performed a *Selected Companies Analysis*, but failed to disclose the individual multiples it observed for each of the 29 selected major exchange-traded banks. Proxy, 31-32.

38.     Similarly, for the *Selected Transactions Analysis*, the Proxy omits the individual multiples observed for each of the five selected U.S. bank transactions. *Id.* at 32-33.

39.     With respect to the *Discounted Cash Flow Analysis* for STND, the Proxy fails to disclose: (i) the inputs and assumptions underlying KBW's assumed discount rates ranging from 11.0% to 15.0%; (ii) the present value of implied terminal values of the Company for the period from October 1, 2020 to December 31, 2025; and (iii) the inputs and assumptions underlying KBW's application of a range of 8.0x to 12.0x to STND's estimated 2026 earnings used to calculate the

implied terminal values for the Company. *Id.* at 33.

40.     These key inputs are material to the Company's shareholders, and their omission

renders the summary of KBW's *Discounted Cash Flow Analysis* incomplete and misleading.  As one

highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow

analysis a banker takes management's forecasts, and then makes several key choices "each of which

can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L.

Rev. 1557, 1576 (2006).   Such choices include "the appropriate discount rate, and the terminal

value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly
> affect the discounted cash flow value.  For example, a change in the discount rate by
> one percent on a stream of cash flows in the billions of dollars can change the
> discounted cash flow value by tens if not hundreds of millions of dollars….This issue
> arises not only with a discounted cash flow analysis, but with each of the other
> valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or
> analyze the valuations underlying a fairness opinion* **unless full disclosure is made of
> the various inputs in the valuation process, the weight assigned for each, and the
> rationale underlying these choices**. The substantial discretion and lack of guidelines
> and standards also makes the process vulnerable to manipulation to arrive at the "right"
> answer for fairness.  This raises a further dilemma in light of the conflicted nature of
> the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, the Company's

shareholders cannot evaluate for themselves the reliability of KBW's *Discounted Cash Flow*

*Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the

true value of the Company or were the result of an unreasonable judgment by KBW, and make an

informed decision regarding whether to vote in favor of the Proposed Transaction.

41.     Third, the Proxy fails to disclose certain information in the *Background of the Merger*,

which renders the Proxy materially misleading.

42.     To start, the Proxy states that STND entered into nondisclosure agreements ("NDA")

with Company A and Company C. Proxy, 18, 20.  However, the Proxy fails to disclose whether those

NDAs contained standstill provisions and, if so, whether those standstill provisions contained a "don't

ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon execution of the Merger Agreement or still remain in effect.  The failure to disclose the existence of DADW provisions creates the false impression that an interested party who signed an NDA could have made a superior proposal.  **But that is not true.**  If those NDAs contained DADW provisions, the interested potential acquirers could only make a superior proposal by breaching their respective agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly.  Thus, the omission of this information renders the references to the NDAs executed with Company A and Company C in the Proxy materially incomplete, and therefore misleading, as any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

43.     In addition, the *Background of the Merger* states that on March 4, 2020, STND "engaged another third party financial advisor to conduct an independent financial review of Company A to better understand the value of Company A's business and, in turn, the potential value of its stock as currency." *Id.* at 19.  Further, the Proxy discloses that on August 11, 2020, the Board considered this third party financial advisor's review regarding Company A to determine whether the Board should accept Company A or Dollar Mutual's acquisition bid. *Id.* at 21.  Therefore, Defendants must disclose the name of this "third party financial advisor," and why Defendants needed to engage a separate financial advisor to review Company A's financial information. This information is crucial for shareholders to know because Company A was the only other bidder in competition with Dollar Mutual at the end of the process leading up to the Proposed Transaction.

44.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction,

Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

48.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

49.     Defendants have issued the Proxy with the intention of soliciting the Company's public common stockholders support for the Proposed Transaction.   Each of the Individual

Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for the Company; (ii) the valuation analyses performed by KBW in support of its fairness opinion; and (iii) the *Background of the Merger*.

50.      In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

51.      The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that KBW reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by KBW, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review KBW's analyses

in connection with their receipt of the fairness opinions, question KBW as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

52.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

53.    STND is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

54.    The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

55.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.    The Individual Defendants acted as controlling persons of STND within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or

directors of STND, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

59.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their

acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

62.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### (Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)

63.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

65.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

66.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

67.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 3, 2020                              **MONTEVERDE & ASSOCIATES PC**

                                                  /s/  Juan E. Monteverde
                                                      Juan E. Monteverde (JM-8169)
                                                      The Empire State Building
                                                      350 Fifth Avenue, Suite 4405
                                                      New York, NY 10118
                                                      Tel:(212) 971-1341
                                                       Fax:(212) 202-7880
                                                       Email: jmonteverde@monteverdelaw.com

                                                      *Attorneys for Plaintiff*